# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID R PICKETT and U.S. | § | |
| REFRIGERATION TECHNOLOGIES, LLC | § | |
| | § | Civil Action No. 4:17-cv-00666 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| | § | |
| ICECOLD2, LLC, ECOCOOL WORLD, | § | |
| LLC, ECOCOOL WORLD, INC., and | § | |
| RAKESH DESAI, INDIVIDUALLY | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Summary Judgement (Dkt. #31). The Court, having reviewed the motion, pleadings, and relevant evidence, finds that Plaintiffs' motion for summary judgment should be granted.

## BACKGROUND

Plaintiff David Pickett is the inventor of a product known as IceCold (the "Product"). The Product is designed to cause air conditioning units and refrigeration systems to perform more efficiently and use less energy. On or about June 6, 2014, Pickett and Plaintiff U.S Refrigeration Technologies, LLC ("USRT") entered into a Management Agreement (the "Original Management Agreement") with Defendant IC2. On or about June 6, 2016, Plaintiffs entered into an Amended and Restate [sic] Management Agreement with Defendants IC2 and ECWLLC whereby IC2 and ECWLLC, collectively, were appointed as the exclusive management company for the distribution of the Product (the "Amended Agreement"). At that time, Pickett was also the owner and holder of the intellectual property of the IceCold Product (the "Product IP") and had licensed the trademark and distribution rights for the Product to USRT.

Under the Amended Agreement, Defendants, as the sole and exclusive worldwide management company of the Product, were to promote the sale of the Product through direct sales

and the engagement of distributors. Defendants were required to provide sales reports and other information relating to the customers and distributors of the Product to Plaintiffs. Further, Plaintiffs were to be paid a royalty on all sales of the Product through the efforts of Defendants.

Plaintiffs contend that, although the Amended Agreement gave Defendants the right to distribute the Product and the opportunity to purchase the Product IP, it also expressly provided that Defendants were not investors, owners, shareholders, members or any type of equity owners in USRT. Further, Plaintiffs aver that, under the Amended Agreement, Defendants were not to permit any officer, director, employee or representative of Defendants to attempt to bind USRT or Pickett to any agreement, contract or other obligation. Defendants, contrariwise, contend that USRT is bound by, and required to fulfill, Defendants' contracts with their distributors and sub-distributors, including the February 22, 2017, distributor agreement with ECWINC, an entity affiliated with Defendants.

In addition to managing the distribution of the Product, Defendants agreed to purchase the Product IP from Pickett for a sum certain paid over time in installments. Specifically, Defendants agreed to pay $6,560,000 in the following installments: $20,000 on August 31, 2016; $20,000 on September 30, 2016; $20,000 on February 8, 2017; $25,000 on or before February 15, 2017; $25,000 on or before February 28, 2017; $700,000 on or before March 31, 2017; $500,000 on or before July 31, 2017; $750,000 on or before December 31,2017; $500,000 on or before December 2018; and execution of a Note in the amount of $4,000,000 on or before January 1, 2019.

In the event that the Defendants failed to make any of the required payments, the Amended Agreement provided that Pickett could terminate the Agreement after giving written notice and seven (7) business days opportunity to cure. Plaintiffs contend that Defendants failed to satisfy their payment obligations to purchase the Product IP. Specifically, that Defendants made the initial

five (5) installment payments but failed to make a required $700,000.00 payment that was due on or before March 31, 2017. Thus, on June 12, 2017, Plaintiffs notified Defendants of the default, in writing, and gave the required seven (7) business days opportunity to cure the default. Plaintiffs allege that Defendants failed to cure their default. As a result, on June 28, 2017, Plaintiffs delivered notice to Defendants terminating the Amended Agreement, including the right to manage and/or distribute the Product as well as the right to purchase the Product IP.

On August 8, 2017, Plaintiffs filed suit against Defendants in the 296th Judicial District Court of Collin County, Texas, asserting claims for a declaratory judgment and breach of contract. On September 20, 2017, Defendants removed the present action to the United States District Court for the Eastern District of Texas on the basis of diversity jurisdiction. On September 11, 2017, Plaintiffs filed the present motion for summary judgment (Dkt. #31) on their request for a declaratory judgment. Defendants have failed to respond to Plaintiffs' motion for summary judgment.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

# ANALYSIS

Plaintiffs requests that the Court declare the rights, status, and legal relations between the parties under the amended Agreement as follows:

- Plaintiffs' June 28, 2017 termination of the Amended Agreement was proper;
- Defendants no longer have any right under the Amended Agreement including, but not limited to,
    - o the right to sell or offer to sell the Product to any distributor, subdistributor or end user customer;
    - o the right to maintain web sites offering the Product for sale; and
    - o the right to use the trademarks or other intellectual property of Plaintiffs that relate to the Product;
- Distributors or sub-distributors contracted by Defendants pursuant to the Agreement are not trade secrets or otherwise confidential information of the Defendants;
- Nothing in the Amended Agreement prohibits Plaintiffs, their subsidiaries, and/or affiliates and licensees, from selling the Product directly to any distributor or subdistributor, whether or not such distributor or sub-distributor previously contracted with Defendants;
- The Amended Agreement does not require Plaintiffs to fulfill Defendants' contracts with distributor or sub-distributors; and
- Plaintiffs are not bound by the terms of the distributor agreement between Defendants and EcoCool World, Inc.

As evidence, Plaintiffs submitted: Plaintiffs' First Request for Admissions to Defendants, which have been deemed admitted by Defendants' failure to respond; the June 12, 2017, Notice of Default; June 28, 2017, Notice of Termination; the June 26, 0216, Amended and Restated Management Agreement; Defendants' Answer to Plaintiffs' Original Petition and Counterclaims; and an affidavit of Chad A. Johnson.

Defendants did not respond to the present motion. The Court notes the following:

"In resolving the motion for summary judgment, the court will assume the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

5

*See* Local Rule CV-56(c).

After reviewing Plaintiffs' request for a declaratory judgment and supporting summary judgment evidence, the Court finds that there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law on their declaratory judgment cause of action.

**Attorneys' Fees**

Plaintiffs further request attorneys' fees in the amount of $63,458.00 and costs in the amount of $716.50 for the prosecution of this case. Plaintiffs rely on the Texas Declaratory Judgments Act (DJA) as set forth in Chapter 37 of the Texas Civil Practice and Remedies Code. Specifically, Plaintiffs cite Section 37.009, which provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The Court, however, finds Plaintiffs' request misplaced.

Defendants removed the present action thereafter rendering the DJA inapplicable. This is because the Fifth Circuit has foreclosed the use of the DJA in federal court. *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 411 (5th Cir. 2006); *Olander v. Compass Bank*, 363 F.3d 560, 567–68 (5th Cir. 2004). The Court is to "apply state attorney's fee law only when it embodies a substantive policy." *Camacho*, 455 F.3d at 412. And, the Fifth Circuit has held that the DJA is procedural and not substantive. *Id*. "The Declaratory Judgments Act does not confer new substantive rights upon the parties nor additional jurisdiction on the courts but merely provides a procedural device for determination of controversies which are already within the jurisdiction of the courts." *Hous. Auth. of City of Harlingen v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied). Plaintiffs have not identified a substantive statute that provides for attorneys' fees in the disposition of its declaratory judgment cause of action.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Summary Judgment (Dkt. #31) is

**GRANTED** and the Court declares the following:

- Plaintiffs' June 28, 2017 termination of the Amended Agreement was proper;
- Defendants no longer have any right under the Amended Agreement including, but not limited to,
  - the right to sell or offer to sell the Product to any distributor, subdistributor or end user customer;
  - the right to maintain web sites offering the Product for sale; and
  - the right to use the trademarks or other intellectual property of Plaintiffs that relate to the Product;
- Distributors or sub-distributors contracted by Defendants pursuant to the Agreement are not trade secrets or otherwise confidential information of the Defendants;
- Nothing in the Amended Agreement prohibits Plaintiffs, their subsidiaries, and/or affiliates and licensees, from selling the Product directly to any distributor or subdistributor, whether or not such distributor or sub-distributor previously contracted with Defendants;
- The Amended Agreement does not require Plaintiffs to fulfill Defendants' contracts with distributor or sub-distributors; and
- Plaintiffs are not bound by the terms of the distributor agreement between Defendants and EcoCool World, Inc.

It is further **ORDERED** that Plaintiffs' request for attorneys' fees and costs is **DENIED**

at this time. Plaintiffs have remaining a cause of action for breach of contract.[1]

**IT IS SO ORDERED.**

 **SIGNED this 6th day of March, 2019.**

_____

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that Plaintiffs indicated in their motion for sanction (Dkt. #30) that they "intend to dismiss the breach of contract claim without prejudice as that claim is solely against parties who reside in Canada and have not been served in this case." Plaintiffs, however, have not formally requested dismissal of the breach of contract cause of action.