# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DAVID R PICKETT and U.S. REFRIGERATION TECHNOLOGIES, LLC <br><br> v. <br><br> ICECOLD2, LLC, ECOCOOL WORLD, LLC, ECOCOOL WORLD, INC., and RAKESH DESAI, INDIVIDUALLY | § § § § § § § § § § | Civil Action No. 4:17-cv-00666 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Sanctions (Dkt. #30). The Court, having reviewed the motion, pleadings, and relevant evidence, finds that Plaintiffs' motion for sanctions should be granted in part.

## BACKGROUND

Plaintiff David Pickett is the inventor of a product known as IceCold (the "Product"). The Product is designed to cause air conditioning units and refrigeration systems to perform more efficiently and use less energy. On or about June 6, 2014, Pickett and Plaintiff U.S Refrigeration Technologies, LLC ("USRT") entered into a Management Agreement (the "Original Management Agreement") with Defendant IC2. On or about June 6, 2016, Plaintiffs entered into an Amended and Restate [sic] Management Agreement with Defendants IC2 and ECWLLC whereby IC2 and ECWLLC, collectively, were appointed as the exclusive management company for the distribution of the Product (the "Amended Agreement"). At that time, Pickett was also the owner and holder of the intellectual property of the IceCold Product (the "Product IP") and had licensed the trademark and distribution rights for the Product to USRT.

Under the Amended Agreement, Defendants, as the sole and exclusive worldwide management company of the Product, were to promote the sale of the Product through direct sales

and the engagement of distributors. Defendants were required to provide sales reports and other information relating to the customers and distributors of the Product to Plaintiffs. Further, Plaintiffs were to be paid a royalty on all sales of the Product through the efforts of Defendants.

Plaintiffs contend that, although the Amended Agreement gave Defendants the right to distribute the Product and the opportunity to purchase the Product IP, it also expressly provided that Defendants were not investors, owners, shareholders, members or any type of equity owners in USRT. Further, Plaintiffs aver that, under the Amended Agreement, Defendants were not to permit any officer, director, employee or representative of Defendants to attempt to bind USRT or Pickett to any agreement, contract or other obligation. Defendants, contrariwise, contend that USRT is bound by, and required to fulfill, Defendants' contracts with their distributors and sub-distributors, including the February 22, 2017, distributor agreement with ECWINC, an entity affiliated with Defendants.

In addition to managing the distribution of the Product, Defendants agreed to purchase the Product IP from Pickett for a sum certain paid over time in installments. Specifically, Defendants agreed to pay $6,560,000 in the following installments: $20,000 on August 31, 2016; $20,000 on September 30, 2016; $20,000 on February 8, 2017; $25,000 on or before February 15, 2017; $25,000 on or before February 28, 2017; $700,000 on or before March 31, 2017; $500,000 on or before July 31, 2017; $750,000 on or before December 31,2017; $500,000 on or before December 2018; and execution of a Note in the amount of $4,000,000 on or before January 1, 2019.

In the event that the Defendants failed to make any of the required payments, the Amended Agreement provided that Pickett could terminate the Agreement after giving written notice and seven (7) business days opportunity to cure. Plaintiffs contend that Defendants failed to satisfy their payment obligations to purchase the Product IP. Specifically, that Defendants made the initial

five (5) installment payments but failed to make a required $700,000.00 payment that was due on or before March 31, 2017. Thus, on June 12, 2017, Plaintiffs notified Defendants of the default, in writing, and gave the required seven (7) business days opportunity to cure the default. Plaintiffs allege that Defendants failed to cure their default. As a result, on June 28, 2017, Plaintiffs delivered notice to Defendants terminating the Amended Agreement, including the right to manage and/or distribute the Product as well as the right to purchase the Product IP.

On August 8, 2017, Plaintiffs filed suit against Defendants in the 296th Judicial District Court of Collin County, Texas, asserting claims for a declaratory judgment and breach of contract. On September 20, 2017, Defendants removed the present action to the United States District Court for the Eastern District of Texas on the basis of diversity jurisdiction.

On December 26, 2017, Plaintiffs served Defendants with requests for production of documents, interrogatories, and request for admissions. Plaintiffs alleges that after being served with this initial discover, Defendants failed to participate meaningfully, if at all, in the present action as follows:

> On December 26, 2017, Plaintiffs served discovery on the Defendants consisting of Requests for Production of Documents, Interrogatories, and Request for Admissions (the "Initial Discovery Requests"). Responses and objections to the Initial Discovery Requests were, therefore, due on January 25, 2018. The discovery requests are specifically tailored to obtain information related to the claims, affirmative defenses, and counterclaims asserted in this lawsuit.
>
> On January 24, 2018, Defendants' former counsel e-mailed seeking an additional thirty (30) days in which to serve responses to the Initial Discovery Requests. No written extension was ever granted but, via telephone, the undersigned agreed that Defendants could have a two (2) week extension and then discuss whether additional time was necessary. This verbal agreement extended the due date until February 9, 2018. February 9, 2018 came and went without any responses or objections being served by Defendants.
>
> Over the course of the next six (6) weeks the undersigned had multiple telephone communications with Defendants' former counsel regarding Initial Discovery Requests but no responses or objections were ever served. Thus, on

March 19, 2018, the undersigned e-mailed seeking to learn when responses would be provided and was simply told he would hear back "as soon as possible."

Hearing nothing for over a week, the undersigned again e-mailed regarding the Initial Discovery Requests on March 27, 2018. Again, the response was "soon."

On April 19, 2018, Plaintiffs served their Second Set of Interrogatories, again seeking information from the Defendants.

Despite promising information soon, after receiving nothing for almost another month, the undersigned inquired once again regarding the Initial Discovery Requests. Specifically, on April 20, 2018, the undersigned e-mailed Defendants' former counsel to inquire about the Initial Discovery Requests, asserting that any objections had been waived and the admissions would be deemed admitted, and informing Defendants that if responses and documents were not received by April 24, 2018—four (4) months after the Initial Discovery Requests were served—Plaintiffs would have no choice but to file a motion to compel with the Court.

On June 28, 2018, Defendants' former counsel filed Defendants' Response to Plaintiffs' Motion to Compel [Dkt. No. 21] wherein Defendants' former counsel stated that "despite repeated attempts, Defendants have refused to respond or provide the requested information for more than six months" and admitted that there was no good-faith basis to oppose the Motion to Compel.

On July 18, 2018, the Court granted Plaintiffs' Motion to Compel Discovery (the "Order"). [Dkt. No. 24] Specifically, the Court ordered Defendants to fully respond, without objection, to the Initial Discovery Requests and the Second Set of Interrogatories within ten (10) days of the Order—July 28, 2018.

Despite the Court's clear instructions, as of the filing of this Motion for Sanctions, Defendants have not acknowledged the Order, responded to the Order, or provided any responses or documents in compliance with the Order. Instead, Defendants have continued their practice of simply ignoring this lawsuit.

(Dkt. #30, at p. 2–4).

On August 23, 2018, Plaintiffs filed the present Motion for Sanctions (Dkt. #30). Defendants failed to file a response.

## LEGAL STANDARD

Rule 37 "authorizes a district court to strike pleadings of . . . a party that fails to comply with a discovery order." *U.S. for the Use of M–CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1013 (5th Cir.1987); FED. R. CIV. P. 37(b)(2)(A) (stating that a pleading may be struck in

whole or in part). A district court order must provide a sufficient basis for the review of its decision, but the court "need not provide specific factual findings in every sanction order." *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993). "[T]he degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 883 (5th Cir. 1988) (en banc). Striking a defendant's pleadings is an appropriate sanction where the "defendant demonstrates flagrant bad faith and callous disregard of its responsibilities." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990).

## ANALYSIS

Plaintiffs request that, as a sanction for Defendants' noncompliance with the Court's Order (Dkt. #24) compelling Defendants to respond to Plaintiffs' discovery requests, the Court strike Defendants' pleadings and render a default judgment against Defendants for the declaratory relief sought in Plaintiffs' original petition. In a previous Memorandum Opinion and Order (Dkt. #39), the Court granted Plaintiffs summary judgment for the declaratory relief, and therefore an entry of a default judgment on this point is moot. The Court further does not find it justified to strike Defendants pleadings in whole; it is, however, appropriate to strike Defendants pleadings to the extent that they assert any counterclaims. Defendants' answer (Dkt. #16) to Plaintiffs' petition alleges breach of contract and seeks a declaratory judgment. Plaintiffs sought discovery on these counterclaims, and Defendants failed produce responsive documents, even after being compel by Order (Dkt. #24) of the Court. In fact, Defendants have neglected to pursue their counterclaims and have become utterly unresponsive in this action.

5

Since Plaintiffs served Defendants with their initial discovery requests, Defendants have either failed to respond to the requests or provided inadequate responses. On June 14, 2018, Plaintiffs filed a motion to compel discovery (Dkt. #20). Defendants former counsel did not oppose the motion to compel and stated that Defendants refused to respond or provide any information. Therefore, on July 18, 2018, the Court granted Plaintiffs' motion to compel and ordered that Defendants fully respond to Plaintiffs' initial discovery requests and second set of interrogatories within ten days of the Order (Dkt. #24). To date, Defendants have not responded to the Order, responded to any of Plaintiffs' discovery requests, requested any discovery, or participated in this action. The Court, therefore, finds it appropriate to strike Defendants' pleadings, in part, as they concern any counterclaims that Defendants have asserted.

**Attorneys' Fees and Costs**

Plaintiffs also request attorneys' fees in the amount of $59,458.00 and costs in the amount of $716.50. Rule 37 provides that the Court must order "the disobedient party . . . pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstance make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). Plaintiffs attached an affidavit to support its request for attorneys' fees and costs. Plaintiffs' amounts, however, are not limited to the attorneys' fees and costs incurred as a result of Defendants' failure to comply the Court's Order to compel (Dkt. #24)—but rather include the expenses incurred in the prosecution of the present action in its entirety. For example, Plaintiffs' affidavit indicates that the requested attorneys' fees and costs include:

    a. Investigate Plaintiffs' claims;
    b. Review Plaintiffs' supporting documents;
    c. Draft and file Plaintiffs' Original Petition;
    d. Obtain service of same upon Defendants;
    e. Research regarding service of Canadian defendants;
    f. Receive and review Defendants' Notice of Removal;

      g. Draft and serve Plaintiffs' Initial Disclosures;
      h. Draft Proposed Scheduling Order;
      i. Draft Joint Report of Attorney Conference;
      j. Engage in substantial and lengthy negotiations over a potential settlement and new business arrangement;
      k. Draft settlement documents and business agreements that were never executed by Defendants;
      l. Draft and serve First Set of Interrogatories to Defendants;
      m. Draft and serve First Request for Production to Defendants;
      n. Draft and serve First Request for Admissions to Defendants;
      o. Numerous conferences with counsel for Defendants' regarding Defendants' responses to discovery;
      p. Correspondence with counsel for Defendants regarding Defendants' answers to discovery;
      q. Draft and file motion to compel and seeking an award of attorney's fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) against Defendants;
      r. Prepare for hearing on Motion to Compel and attendance at the hearing of the Motion to Compel;
      s. Draft and serve Second Set of Interrogatories to Defendants;
      t. Draft and serve Third Set of Interrogatories to Defendants;
      u. Draft and serve Second Request for Production to Defendants;
      v. Draft and serve Second Request for Admissions to Defendants;
      w. Draft Joint Final Pre-Trial Order;
      x. Confer with counsel for Defendants regarding Joint Pre-Trial Order and Motion for Continuance and Withdrawal of Jury Demand;
      y. Draft Motion for Continuance and Withdrawal of Jury Demand;
      z. Draft Proposed Amended Scheduling Order;
      aa. Draft Motion for Discovery Sanctions;
      bb. Draft Order Granting Motion for Discovery Sanctions and Striking Defendants' pleadings;
      cc. Draft Affidavit of Chad Johnson in Support of Motion for Discovery Sanctions;
      dd. Draft Interlocutory Default Judgment.

(Dkt. #30-7, at p. 2–3). Thus, Plaintiffs are requesting that the Court order Defendants to pay for expenses incurred before the Court entered the order that Defendants violated. This is beyond the scope of Rule 37, which is designed, in part, to deter a party from disobeying a court order. It does not follow that under Rule 37, a party be obliged to pay for conduct that is prior to and not in breach of a court order.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Sanctions (Dkt. #30) is **GRANTED IN PART**. The Court strikes any and all counterclaims from Defendants' pleadings.

It is further **ORDERED** that Plaintiffs' request for attorneys' fees and costs is **DENIED** at this time. The Court does not foreclose on Plaintiffs' ability to re-urge their request through the filing of the proper motion with the Court accompanied by the appropriate supporting documentation that limits the amounts requested to the expenses Plaintiffs incurred as a result of Defendants failure to comply the Court's Order (Dkt. #24).

**IT IS SO ORDERED.**
**SIGNED this 7th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE